We'll take up the next case, the third case on the docket today, United States v. Cunningham 24-3059. Good morning, Your Honors. Pardon me. My name is Paige Nichols. I represent the appellant, Mr. Cunningham. May it please the Court, I'll jump straight into issue four, which is the evidence is insufficient to support the money laundering convictions. So if I may briefly set the stage, the trial evidence showed that Mr. Cunningham engaged in three main acts with respect to each car that's the subject of a money laundering count. First, he would buy a car after giving false information to secure a bank loan. Then, and really weeks to months later, he would take the title to that car, erase the lien holder information, walk it into a county clerk's office, register the car, and come out with a clear title. After that, 12 days to six weeks after that, by my count, he would take that title into a dealer or title loan company, and he would transfer that title, sell it or borrow against it for cash. Car, title, cash. And the indictment charges these end title transfers for cash as money laundering. But here's the problem. Money laundering focuses on a specific transaction, not a broad scheme to defraud, not a conspiracy, but a transaction, and asks why the defendant engaged in that transaction. Why did Mr. Cunningham transfer these titles at this point? He did it to put money in his pocket. Even the government agrees during its closing argument, argued to the jury that his end goal was cash. He did this for profit. And he gained a significant personal benefit each time he transferred those titles, an immediate benefit, tens of thousands of dollars of cash. Okay, this is exactly when this court has said that the design to conceal inference is more difficult to draw. That language comes from Garcia Emanuel, which, between Garcia Emanuel and the Supreme Court case Cuellar, makes it clear that these are not money laundering transactions. So your argument is that that is part of the underlying crime to get the money in the first place, not after the crime has occurred, the subsequent conduct to conceal how that money was obtained. You're drawing a sharp line, or a line I guess, between the elements necessary to commit the crime to get the money, and that's all part of the elements charges, and then a concealment after that. What do you do now that you got the illegal money so they can't trace it back? Is that the line you're trying to draw? I think I'm thinking of it slightly differently that, okay, the government charges the initial car purchases as bank fraud, and some of these end purchases as, or these end transfers as wire fraud. Let me state it this way. Forget money laundering. When was the crime complete? What was the final element that was done to complete the crime? Well, it depends on which crime we're talking about. So bank fraud, which is the initial purchase. Other than money laundering. Yes. So the government charges the whole thing as a broad conspiracy between the Cunninghams, right? A broad conspiracy to commit a scheme to defraud. And the government charges that from the first loan to the last thing that's charged as money laundering. So in the government's view, in the indictment's view, all of this is part of a big conspiracy to commit a scheme to defraud. But only these transactions here are charged as money laundering. I don't know if I'm answering the court's question or not, but the fact that... I'd like to put it, I just want to know, money laundering is an additional penalty over and above the penalty for doing the crime. Yes. And so I want to know when the conduct for doing the crime stopped and the crime of laundering the money, proceeds of the crime, began. How do we define, how do we legally define where that break occurs? Gotcha. So that... you look at the elements of the original crime. And when those elements are satisfied, then anything subsequent can be money laundering. But money laundering should not be a duplicate characteristic of one of the elements to commit the crime in the first place. That is true, because if you don't have a complete crime, then you don't have proceeds from that crime that can be laundered. Right. So the crime that the government charges as the predicate crime for money laundering is these bank frauds right here. Now, the way the scheme to defraud is charged in the indictment, it's not over yet. So Your Honor probably has a point there. But additionally, the... Oh, I lost my train of thought. Not only does the money laundering crime have to post-date the predicate crime such that there are proceeds in the first place, but it also has to be intended to conceal. And that's been the main focus of our brief. But I understand what Your Honor is saying additionally. And there's simply no evidence that this is part of some long concealment game for profit in the future. This is it. This is the end game right here. The government even argued that in closing. The government said at the end they used the title to receive cash. The end goal of this scheme was to use those vehicles as a means to make profit to get cash. That's the government's closing argument to the jury. So even the government agrees that the motive down here is to actually, you know, reap the benefits of this bank fraud up here. This is basically Mr. Cunningham cashing in on the fraud there. And so under everything this court has said about money laundering in Garcia-Emmanuel, the Supreme Court's case of Cuellar tells us that the fact... The government's really focused on this money title washing thing in the middle here, right? But this is an event that precedes the final cashing out. And in Garcia-Emmanuel, this court said very clearly that engaging in a transaction with money whose nature has been concealed through other means is not a crime. The government must prove that the specific transactions were designed to launder money or here to launder a title. Not that those involved money that was previously laundered through other means. Now I'm not saying the title washing was laundering, but this is just... I think money laundering is kind of looking at, like Your Honor said, you commit a crime. And then at some point, everybody wants to cash out, right? And money laundering is really focused on what happens in the middle there. Is the defendant creating some kind of Rube Goldberg machine that makes it difficult to get caught before he ends up cashing out? So could I just ask at this point, when we get to the, I guess, the cash out step in all this, I guess... Wasn't he at that point intending to conceal that the car still had a lien holder and that he didn't own it? To be clear, why isn't that intent to conceal relevant to the money laundering? It's not irrelevant to it, but it's not enough. It doesn't get us there. So that's what the Supreme Court says in Cuellar, that using concealment to accomplish a transaction might suggest that it's one step in a larger plan, but its probative force in that context is weak. The title, that concealment already happened back here at the title washing, and yes, it continues through this transaction over here, but it's really just the how, not the why. And here's a thought experiment. Would Mr. Cunningham have transferred those titles over here if he wasn't going to get money for them? Of course not. That would be an unreasonable inference to make. That's not even the government's theory. But the government has to show that this transaction was also intended, not just a trivial intent to continue concealing. And also remember that Mr. Cunningham conducted these transactions in an open and notorious manner, and that's what... Let me get where I want to be here. And the fact of that undermines any inference of a design to conceal and helps us understand that whatever lies were being told over here to facilitate the transfer were just for that purpose, to facilitate the transfer, so he gets his money because that's what he wants. He appears in person, he uses his real name, uses a driver's license with his full real name, which is a unique name, Montresa Lavelle Cunningham. He does not disguise the VIN numbers. And what are the things that show up in the DMV records? The VIN numbers and his name. He's really... I know effects aren't necessary, but they're also not sufficient. But there really aren't any concealing effects here. He's creating a paper trail. He's raising red flags. He doesn't know. He goes to three different title loan companies that have the same parent company, and that parent company sees this happening. That's kind of how, at least one angle of how he gets caught. But, again, all of those things that were lies down here were lies intended to get that money in his pocket, right? He had to pass a credit check. He had to present a clear title. Well, he did those things, but he didn't do them because he had some major plan to continue concealing his fraud. He did them because he was greedy. He wanted that money in his pocket, and he got it. And we can't infer a design to conceal from the evidence here. It's not like he said anything that would suggest that he had a long game here. This is not the long game. This is the end game. He doesn't do some kind of under-the-counter transaction. He played a long game how many times? Seven times? He played multiple long games, but this transaction here is the end of each of those games. Well, I understand, but he wasn't passing clear title. He was turning over a card. As far as the buyer was concerned, it was free and clear of any encumbrance, and that wasn't the case. Right. I guess I'm still not following here. Are we making a mens rea argument? Are you making a mens rea argument? Yes, that's exactly what the design to conceal element is. The mens rea that's required is that this transaction had to have, as its purpose, concealment. Now, I'm not saying it had to be the only purpose. We all know his purpose was to get money, and he got money. In whole or in part. I'm sorry? In whole or in part. In whole or in part. That's right. But this Court has made it clear it can't just be a trivial purpose. It can't just be a side effect. The government adopted the language from the Falkenberry case out of the Sixth Circuit. I like that language, too. It has to be an animating purpose. It has to be the thing that drives him or propels him to engage in this transaction. It's not. Money is driving that. And you can't infer anything more than that beyond a reasonable doubt. And if I could save my time for rebuttal, I'd like to do that. Thank you, Counsel. Thank you. Good morning, Your Honors. James Brown for the United States. May it please the Court. Your Honor, I'd like to start with Issue 4. But before doing so, we'd like to make a concession on Issue 3. The Internet count on count 9, I believe, whether or not his use of the Internet was sufficient to show interstate commerce. We're conceding that it was not, and we're conceding Issue 3. You muddled your words. You're going to have to say what you said again, but this time pronounce every word into the microphone. All right. We're conceding Issue 3. You are? We are conceding. Conceding Issue 3. That is counts 12 through 16? No, that would be Issue 4, the money laundering. Issue 3 relates to count 9, whether or not the transmission was passed through interstate commerce. So it's the 2014 Land Rover, count 9. It would be count 9, Issue 3. And you are conceding that there was no evidence there of interstate transmission of communications? We didn't prove it. You didn't prove it. Correct. You had already conceded that the Internet alone in your briefing was not sufficient, the Internet activity alone, and then you had an alternative argument, as I recall, that he was in Georgia at the time. He emailed, but you're now conceding the full issue. That's correct, Your Honor. And just for a little background, the reason we made the concession, even in light of our argument in the brief, is that what we charged in the indictment was that his communication touched a server in California, and that wasn't what our argument was. So we think the better course is just to concede that. We appreciate that. Thank you. It's really uncertain where the servers were, but there was no indication that they were in Kansas. Right. We just didn't prove that it touched a server out of Kansas. Okay. That being said, I'd like to talk about the money laundering convictions that my colleague started with, and maybe I can end up with Issues 1 and 2. Going to the issue of intent, and we're talking about the fourth element of the money laundering charge, whether that was that financial transaction involving giving basically a clean title or a fake title to somebody else for money was designed to conceal the ownership of the car. That's what we're arguing about here on Issue 4. And I'd like to make four points, and I'd like to get my points out if I could before I get questions from the court. Of course, I'd be happy to take questions afterwards. I just don't want the argument to get muddled. No guarantees. No guarantees. I totally understand. Point number one, giving a clean title was a false statement. It was a false statement to the person that they were giving the money to. Just saying, here's the title, that's a false statement. That's like saying, I own this car, when he did not own the car. Point number two, the act of giving the title for money was itself an act of concealment. The act of giving the title for money was itself an act of concealment. By giving a fake title to somebody, he was concealing the fact that he did not own the car. Point number three, a purpose of that act of concealment was to conceal that the defendant did not own the car. Again, a purpose of that act of concealment was to conceal that the defendant did not own the car. And then my final point is point four. That purpose was more than trivial because the transaction could not have occurred if defendant had not concealed that he did not own the car. That purpose was more than trivial because the transaction could not have occurred if defendant had not concealed that he did not own the car. So, Your Honor, those are the four points that we think establish that this transaction, the financial transactions, the defendant giving fake titles to others in exchange for money, were all financial transactions designed to conceal who owned the car. It doesn't matter that it couldn't have occurred. That's not really what we look at. We look at what was the purpose. Right. Facilitating the purpose, what was the purpose of the transaction? Facilitating the purpose is not sufficient. As I read your brief, that's essentially what you were arguing is that altering the title to conceal the earlier acts of fraud was somehow sufficient because it was, what, I don't know. I mean, it wasn't the purpose, but it was certainly concealment at that point. How does that make the purpose of this transaction concealment? Well, the reason we're saying that it makes the purpose non-trivial. We're saying it's a purpose, that it's a non-trivial purpose, and as the Court pointed out earlier, it doesn't have to be the entire purpose. I don't even see how it's a purpose right now. Okay. The Court is suggesting that here he gave the title away to facilitate the transfer. Okay. That is how the transaction occurred. That's how he got the money. That's part of the crime. That's part of the underlying crime. Right. That's how he did it. Right. But telling the lie shows the purpose. I mean, they're not mutually exclusive. Telling the lie, this is my car, and giving away a title that's basically a lie saying this is my car in order to get money shows that the purpose is to lie. That means the purpose of that transaction was to promote that lie and benefit from that lie. No, the purpose was to get the cash from the vehicle. That was his ultimate purpose for all of this. And we think that's basically irrelevant. That was his ultimate purpose. That that was his ultimate purpose does not answer the question whether the financial transaction was designed in whole or in part to disguise who owned the cars. It doesn't answer that question. Let me ask it this way. Do you think you could have a money laundering charge that occurs before the underlying crime is complete? No. No. Okay. So you agree that it's okay to look at it in a two-step process. What elements had to be completed to commit the crime? And then what was done after the crime was committed to launder the fruits of that crime? Is that analysis acceptable to you? Well, we think the analysis is consistent with the elements of the crime because the elements of money laundering assume that there's been a bank fraud, which is a previous crime. If there hadn't been one, you wouldn't have money to launder. That's correct. You've got to have illegal money as a predicate before you have anything to launder. There's no object to the sentence. There's no nominative noun to the sentence first. Right. We need to prove an antecedent specified unlawful activity, which in this case was bank fraud and wire fraud. So, yes, we would agree with the court's way of looking at it. All right. But going back to Judge Moritz's question, you know, the end game doesn't really answer the question of whether or not the financial transaction was designed in whole or in part to disguise who owned the car. That doesn't answer the question, and that doesn't exclude the fact that the financial transaction was designed at least in part to disguise who owned the car. The two are not logically mutually exclusive. Just because the end game was one thing, that doesn't mean that he couldn't have had another part purpose for doing the transactions. And, of course, the transactions were all about a lie. The lie was what perpetuated the fraud, promoted the fraud. The lie is what allowed him to get money. The lie was the concealment. The concealment was the purpose of the transaction. You're saying that now it's different than what I thought you had conceded before. You are saying that the act of money laundering could occur simultaneously and with the very same conduct that is used to commit the crime in the first place. Is that your position, then? No, we're not saying that, Your Honor. We're just talking about the fourth element of the elements of money laundering as they were instructed to the court. We're just talking about the fourth element of money laundering. I understand that fourth element, yeah. But I don't think we said anything inconsistent with what we said before. All right. Could you talk about the sufficiency of the evidence issue? I think it's the first issue on account two. Issue one aiding and abetting with respect to account two? Yes. Okay. On Felicia's bank fraud. Right. Your Honor, we'd like to preface our discussion of that with observing that the jury actually found that Felicia and the defendant had a conspiracy to commit bank fraud and wire fraud that started on December 3, 2018, and that Felicia purchased this car on December 5, 2018. So they were in a conspiracy to commit bank fraud and wire fraud at the time that she purchased this car. We don't think that that fact can be taken out of the equation or undervalued at all. That's a pretty significant finding that the defendant does not even contest on appeal. So we have that as sort of a factual and legal background to look at this. What else do you have there? What we have, Your Honor, is we look at not just what the defendant was thinking at the time that Felicia signed these loan documents, which is the perspective that the defendant would have us look at, but we looked at all the evidence, the totality of the evidence, that what did the defendant know before the transaction and after the transaction. And, Your Honor, we get that from the Joseph case, where this court said that when you're analyzing intent— I'm sorry, which case? The Joseph case, where the court said that when you're looking at intent to defraud, you can look at what happened before the fraud occurred and after the fraud occurred to look at somebody's intent at the time of the fraud. That's a pretty non-controversial proposition. So we look at basically the whole course of conduct of that conspiracy to defraud, the conspiracy of bank fraud and wire fraud, and the whole course of defendant's conduct to look at what his intent was, what circumstantial evidence points to his intent at the time of Felicia's buying of that car. And when we look at all of that evidence, we can see that Felicia's purchase basically fit as part of a pattern with the defendant's other purchases. They were extremely similar. You lie on the loan applications, you get the car, you stop making payments on the car, and then you erase the stuff on the title, and then you get a clean title. It's exactly the same. It follows the same pattern. I understand, but you still have to show that he knew of this fraud, Felicia's fraud, in this instance, December 2018 purchase, before it happened. We have to show that he knew of the fraud. Before it happened. Well, or at the time that it was taking place. And that he intentionally participated. Right. And we can discern that intent not only from what happened before the event, which is December 3, which is when they entered into their conspiracy, but also what happened after the event. We can determine their intent by defendant's actions before and after that day. That's what we're saying. And so that's why we say all that stuff is relevant, because you can look at stuff that happened after it to say, okay, let's go back. Any of this stuff is approbative of his intent at the time that transaction took place. And that's all we're doing. Counsel, apart from intent, what is the evidence of his conduct? I mean, how did he aid and abet this particular transaction? Well, his conduct shows that he and Felicia had a common agreement. A conspiratorial agreement that the jury found for bank fraud and wire fraud. And this transaction occurred during the time that they had this conspiratorial agreement. I understand that part of your argument. But as to this specific transaction, is there any evidence that he did it? Okay, there's evidence of his association with the transaction, and I can go through that. She purchased the Mercedes in December 18. Her name is on the purchase and loan documents. When it's later registered in Georgia, the title application has defendant's contact information, has defendant's e-mail, has defendant's the same number the defendant listed as his phone number on her subsequent applications, has the same mailing address the defendant used on his subsequent applications. That shows that even for this specific car, they were sort of in cahoots. Wait a minute. It had the same contact information, phone number and all. Was that her phone number, too? Yes. So he shared it, but, I mean, that's – I think you have kind of gotten off the track a little bit by saying the jury found a conspiracy that predated this first event, so therefore he's involved. But we're not asking at the moment about the verdict. We're asking what is the evidence. So we're – you can't create evidence because there's a verdict. The question is maybe the verdict was wrong if there wasn't evidence. So you can't prove that there was adequate evidence because you got a verdict. I mean, the question is was there evidence to support that verdict. And like Judge Matheson, I just do not see anything that suggests he – and I'm not talking about the verdict, but the evidence, any evidence that he knew or aided and abetted in that first car. All right. So let me try to be a little bit more clear. Just focus on the evidence. Don't say, well, the jury found it because that's why we're here on appeal anyhow. Could they? Should they have found that if there was no evidence to support it? So let's just focus on the evidence. Okay. I see my time is up. Can I answer the court's question?  Okay. Your Honor, as far as do we have evidence that on the day that she signed those loan documents and committed the bank fraud that he was there or that he knew about it on that specific date? No, we do not. However, we think that other matters in the record that predated her signing those documents and postdated her signing those documents show that he intended to aid and abet her involvement with that scheme. And we think the conspiracy conviction is probative of his intent because their conspiracy to commit bank fraud and wire fraud, of which this transaction was a part, started two days before this. What is the evidence that he knew about and supported that before it happened? Well, I just said that there is no evidence that he knew about it or supported it before it happened as to the specific event. But we do know that two days before this event, they had entered into a conspiracy to commit bank fraud and wire fraud. How do we know that? You're saying there's a jury verdict. But the question is, was there evidence to support that jury verdict? You're giving us a circular argument. No, I'm not. They've never challenged the evidence to support the verdict. So we have to assume the evidence supported it. They've never challenged it. That's why I talk about it. Well, the problem is that the conspiracy verdict doesn't give you a – it doesn't have the same elements. We still have to look separately to see if the elements of this particular aiding and abetting bank fraud are proven. And it's not – they're not equal. Okay. It understood. I understood they're not equal. The Court's point is very well taken. We're just saying that you can look at evidence that happened before and after the transaction to determine his intent at the time of the transaction. That's all we're saying. Thank you, counsel. Any more questions? All right. Appreciate it. Rebuttal? Did you have – yeah, I think you had time. Very briefly, I think Your Honor has actually already covered this, but the government has a lot to say about how we can discern his intent with respect to that initial bank fraud by Felicia, but had nothing to say about how we can discern his participation, which is what is required to prove aiding and abetting. That's how this was charged, and that's what the government needs to do to prove it, and they did not – definitely not beyond a reasonable doubt. I was just going to mention one last thing about the purpose of the final transactions that put money in Mr. Cunningham's pocket. The government wants to argue that the things he used to facilitate that transaction show his intent to conceal the bank fraud underlying that transaction. This is not consistent with this Court's decision in Garcia-Emmanuel and the Supreme Court's decision in Cuellar. I think Cuellar – we can kind of slot our facts into Cuellar. That defendant went to a lot of trouble to build a secret compartment in a car to hide money in, to transport it across the border. Concealment has to be the purpose of the transport. It has to be the purpose of the transaction, not the thing you do en route to the transaction. Well, that money was still going to be concealed when he crossed the border. That did not matter. Even the fact that the concealment of the money was vital to the transport, that did not make it the purpose of the transport. We have the same problem here. We don't have evidence of a design to conceal, an intent to conceal, a driving, propelling reason for him to engage in these, anything other than to make money. Now, could they have proved it? Maybe they could have. Maybe if the wife had testified and said, yes, he told me, he was going to go do these transactions and he was going to make a bunch of money, and guess what? That's also going to help me hide the true owner of these vehicles. Well, we don't have anything like that. We don't have anything like an under-the-table transaction here to get that money. We don't have anything like him changing the VIN numbers, which actually would have made it harder to trace the cars. We have him using the VIN numbers, using his name, and in fact creating a paper trail that leads to his capture. The evidence does not support an inference of a design to conceal beyond a reasonable doubt, and all of the convictions we've challenged should be reversed. Thank you, Counsel. Thank you. I appreciate both your arguments. They're very helpful for us, and the case will be submitted. Counsel will be excused, and we will.